## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| SHELLY GRAFE and RODNEY GRAFE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Civil Action No.: 1:23-cv-128 |
| | ) | |
| RENT RECOVERY SOLUTIONS, LLC and LANDING at ROUND ROCK ACQUISITION LLC | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

COMES NOW, Plaintiffs Shelly Grafe ("Shelly") and Rodney Grafe ("Rodney") (together, "Plaintiffs"), by and through undersigned counsel, and for their complaint against both Rent Recovery Solutions, LLC ("RRS") and the Landing at Round Rock Acquisition LLC ("The Landing") (together, "Defendants"), and bring this action under the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and the Texas Debt Collection Act, Tex. Fin. Code Ann. § 392. *et seq.*, ("TDCA") to obtain actual damages, statutory damages, injunctive relief, costs, and a reasonable attorney's fee.

1.     Defendants attempted to collect an alleged debt from Plaintiffs when, in fact, Plaintiffs owed them nothing at all.

2.     Consequently, RRS published false credit information about Plaintiffs to at least two credit reporting agencies and other third parties concerning the character, amount or legal status of the alleged debt at issue.

3.     In June 0f 2022, Plaintiffs disputed the debt with a "notice of inaccuracy" letter, yet RRS continued to report it in violation of Texas law during much or all of the remainder of 2022. Texas Finance Code, § 392.202(a).

4.     RRS also failed to respond to Plaintiff's NOI letter with the results of its investigation, because RRS apparently failed to undertake any investigation, as required by Texas law. *See* Texas Finance Code, §§ 392.202(b) & (e); ("On completion by the third-party debt collector of the investigation, the third-party debt collector shall inform the individual of the determination of whether the item is accurate or inaccurate.")

5.     RRS continues to this day to report its collection account on at least one credit bureau report (confirmed again as of 1/12/2023) in violation of Texas law. *See* Texas Finance Code, § 392.202(a) ("If the third-party debt collector reports information related to the dispute to a credit bureau, the reporting third-party debt collector shall initiate an investigation of the dispute … and shall cease collection efforts until the investigation determines the accurate amount of the debt, if any.").

6.     On January 6, 2023, RRS even threatened to continue reporting for over the next half-decade. Indeed, on a TransUnion report RRS informs that the "Estimated month and year this item will be removed" is "09/2028.").

## JURISDICTION & VENUE

7.     Jurisdiction is proper under 28 U.S.C. § 1331, ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce…") and 15 U.S.C. § 1692k (FDCPA) (An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, ...").

8.     The Court also has supplemental jurisdiction over the TDCA claims under 28 U.S.C. § 1367.

9.     Venue is proper in this judicial district because Defendant engaged in the complained of acts in this district. 28 U.S.C. § 1391(b) ("A civil action may be brought in— (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ...") and because Defendant transacts business within this judicial district.

## PARTIES

10.     Plaintiffs are natural persons who currently reside in Austin, Texas.

11.     Plaintiffs are both "consumers" as defined in both the FDCPA and TDCA. *See* 15 U.S.C. § 1692a(3) and Tex. Fin. Code Ann. §§ 392.001(1) & 392.001(2), respectively.

12.     RRS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) of the FDCPA and Tex. Fin. Code Ann. § 392.001(6) & (7), respectively. Debt collection

is the principal purpose of RRS's business.

13. RRS's principal place of business is located at 1945 The Exchange, Ste. 120, Atlanta, GA 30339. RRS is a Texas registered debt collector and is also bonded in Texas through Travelers Casualty and Surety Company of America (File #20070186; Bond #**: 7752241114**TX).

14. RRS's Registered Agent in Texas is Corporation Service Co. 211 E. 7th Street, Suite 620, Austin, TX 78701-3136. RRSs regularly conducts business and collect debts in Texas.

15. Defendant Landing at Round Rock Acquisition LLC ("The Landing") owns and operates the apartment complex known as The Landing at Round Rock, located at 7711 O'Connor Drive, Round Rock, Texas 786811-5541, and it is a "creditor" under the TDCA. A "Creditor means a party, other than a consumer, to a transaction or alleged transaction involving one or more consumers." Tex. Fin. Code Ann. § 392.001(3). "'Debt collection' means an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code Ann. § 392.001(5). The Landing's Registered Agent in Texas is Corporation Service Co., d/b/a CSC Lawyers Incorporating Service. Co., 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

16. Defendants regularly conduct business and collect debts in Texas.

## FACTUAL ALLEGATIONS

**A. Plaintiffs did not owe <u>any</u> money to The Landing after 12-17-2021**

17.     After selling their home of nearly 20 years, Plaintiffs had a brief stay at The Landing at Round Rock ("The Landing"), while waiting for their new condominium to be built.

18.     The Landing is a residential apartment complex in Round Rock, Texas.

19.     On December 14, 2021, shortly after they moved out of the Landing at lease-end, personnel informed the Plaintiffs by email that they had an alleged outstanding balance of $88.06.

20.     Of the $88.06, $54.06 was for an unpaid water utility bill, and the remaining $34.00 was for an alleged "blind replacement fee."

21.     Plaintiffs immediately cut a check to The Landing on December 17, 2021 for $54.06. The Landing deposited this check and it cleared on or about December 28, 2021.

22.     Plaintiffs next protested and informed The Landing that they did not owe anything for any alleged broken blinds because the blinds at issue were previously damaged by some unknown third-party <u>before</u> the Grafes took possession and moved-in. Plaintiffs next provided the move-in inspection sheet as proof they did not owe $34 due to the prior damage. The Landing personnel never responded to the Plaintiffs protest email concerning the blinds charge but instead sent it straight to collections.

**B.     Plaintiffs receive a dunning letter from RRS dated May 20, 2022.**

23.     Despite the above, five months later, RRS attempted to collect an alleged $88.06 debt from Plaintiffs. <u>Exhibit A</u>.

24.     As explained in detail above, the alleged $88.06 debt RRS attempted to collect from Plaintiffs was related to their tenancy at The Landing, which is owned by Defendant Landing at Round Rock Acquisition LLC.

25.     Plaintiffs are informed and believe, and upon such information and belief allege that The Landing placed the debt with RRS for collection.

26.     RRS describes itself as "a national receivables management company exclusively serving the needs of the multifamily industry."[1]

**C.     The RRS dunning letter contained numerous misrepresentations.**



| Date: | 05/20/22 | | |
| Creditor: | THE LANDING AT ROUND ROCK | **STATEMENT DATE** | F |
| File No: | 000029539 | 05/20/22 | 00 |
| Balance Owed: | $88.06 | | |

Dear SHELLY GRAFE,

Rent Recovery Solutions, LLC has received authorization from THE LANDING AT ROUND ROCK to present to you a limited time offer of discount. We recommend you seriously consider this offer, as it will satisfy your obligation to THE LANDING AT ROUND ROCK.

Current Balance: $88.06

Discount Offer: $70.45

Cash Savings: $17.61

This discount offer is time sensitive. Funds in the full discount offer amount must be received by this office no later than 07-04-2022 in order to receive this discount and the credit reporting advantage. After that date, we will continue collection activity against you for the full amount.

We are not obligated to renew this offer.

If you are unable to raise this discount amount, but are concerned about your credit standing, you may call one of our representatives to work out a reasonable payment plan on the full amount owed. Our representative will listen to you with respect and courtesy, and work with you in good faith to put this matter behind you.

**Exhibit B**.

27.     The Landing hired RRS to collect the alleged debt. (RRS "has received authorization from THE LANDING AT ROUND ROCK").

28.     The RRS dunning letter purported to offer Plaintiffs a "discount" of $17.61 of the "current balance" of $88.06 if $70.45 was paid and received by RRS "no

---

[1]     *See* rentrecoverysolutions.com/about-us/multifamily-specialists/

later than 07-04-2022" in order to "receive this discount and the credit reporting advantage."

29.     In other words, RRS used the threat of "credit reporting" the alleged debt as a means to gain the "discount" of $17.61 but only if paid by "07-04-22."

30.     But RRS also told that Grafes that if they "are concerned about [their] credit standing" then they might also "work out a reasonable payment plan on the full amount owed."

31.     But RRS failed to mention that it had already reported the debt collection on both Plaintiffs Equifax credit report on or about May 18, 2022, two days before RRS sent the dunning letter. **Exhibit B**. In other words, the credit damage was "already in the works."

**D.     Plaintiffs sent a Notice of Inaccuracy to RRS.**

32.     For the above-stated reasons, Plaintiffs believed the amount RRS was attempting to collect was inaccurate and false.

33.     Consequently, under Texas law, Plaintiffs sent RRS a notice of inaccuracy on or about June 29, 2022, protesting the alleged debt and was sent to RRS at its headquarters in Atlanta, Georgia (VIA CERTIFIED MAIL - # 9407111898765870047303)):

Shelly & Rodney Grafe
13500 Leaton Grove
Austin, TX 78717

**VIA CERTIFIED MAIL** - # 9407111898765870047303

Rent Recovery Solutions LLC
1945 The Exchange SE Suite 120
Atlanta, GA 30339-2062

June 29, 2022

Re: Notice of Inaccuracy pursuant to Texas Finance Code 392.202

To whom it may concern:

This letter serves as a notice of inaccuracy vis-à-vis the letter you sent me dated 5/20/2022 (File#000029539). Your letter contends that I owe $88.06 to The Landing at Round Rock, and you intend to collect same on their behalf. In fact, we owe nothing. Please perform your investigation and report back to me within 30 days as you are required to do so by Texas Law.

34.     However, RRS <u>never</u> sent Plaintiffs a written statement denying the inaccuracy, admitting the inaccuracy, or stating that it did not have sufficient time to complete an investigation of the inaccuracy, as is required. Texas Debt Collection Act, § 392.202.

35.     The reporting of this collection account tradeline by RRS dropped Plaintiffs credit scores by nearly 50 points each, respectively.

36.     Below is a snapshot of Rodney's Equifax report as of July 27, 2022.

## 10. Collections

Collections are accounts with outstanding debt that have been placed by a creditor with a collection agency. Collections stay on your credit report for up to 7 years from the date the account first became past due. They generally have a negative impact on your credit score.

**Date Reported: May 17, 2022**

| | | | |
|---|---|---|---|
| Collection Agency | RENT RECOVERY SOLUTIONS, LLC | Balance Date | May 17, 2022 |
| Original Creditor Name | THE LANDING AT ROUND ROCK | Account Designator Code | JOINT_ACCOUNT |
| Date Assigned | Mar 18, 2022 | Account Number | xxxxx |
| Original Amount Owed | $88 | Creditor Classification | Rental or Leasing |
| Amount | $88 | Last Payment Date | |
| Status Date | May 17, 2022 | Date of First Delinquency | Oct 04, 2021 |
| Status | UNPAID | | |

**Comments**

**Contact**

RENT RECOVERY SOLUTIONS, LLC
1945 THE EXCHANGE STE 120
ATLANTA, GA 30339
1-866-949-1379

37.     As of January 12, 2023, RRS continues to report its collection account tradeline on Plaintiff Shelly Grafe's TransUnion report. The RRS account states that: (1) it was "updated" on "January 6, 2023;" and the (2) "Estimated month and year this item will be removed" is listed as "09/2028."

38.     Below is a snapshot of Rodney's TransUnion report as of July 14, 2022.

RENT RECOVERY SOLUTIONS295**
Address 1945 The Exchange,STE 120 ATLANTA, GA 30339
Phone (866) 949-1379
Date Opened 03/18/2022
Responsibility Joint Account
Account Type Open Account
Loan Type COLLECTION AGENCY/ATTORNEY
Balance $88
Date Updated 07/01/2022
High Balance $88
Original Creditor THE LANDING AT ROUND ROCK
Past Due $88
Pay Status >Collection<
Estimated month and year this item will be removed 09/2028
Remarks >PLACED FOR COLLECTION<

39.  Under the FDCPA, it is also well settled that a consumer is entitled to dispute the validity of a debt for any reason.[2] Here. Plaintiffs did so.

40.  Trans Union, LLC is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). Trans Union, LLC regularly engages in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide: (a) Public record information; (b) Credit account information from

---

[2]    *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill., May 23, 2002) (Imposing a requirement that a consumer have a `valid' reason to dispute the debt is inconsistent with FDCPA); *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159 (2nd Cir. 2001), *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007). (Unlawful to suggest that proof of payment required for dispute).

persons who furnish that information regularly and in the ordinary course of business.

41.     Most recently, on or about January 12, 2023, Plaintiff Shelly Grafe received her updated credit report from Trans Union, LLC which had been updated on January 6, 2023, by RRS.

42.     All of RRS's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

43.     All of RRS and The Landing's actions under the TDCA complained of herein occurred within two years of the date of this Complaint.

44.     Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the RRS and The Landing.

45.     Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by RRS and The Landing.

46.     Frustrated by Defendants' conduct, Plaintiffs spoke with an attorney regarding their rights.

**DAMAGES**

47.     Plaintiffs: (1) spent time disputing the debt at issue;[3] (2) were subject to hits to their credit in the form of lower credit scores which caused them increased

---

[3]     *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) ("[T]here is no question that wasted time is a concrete harm . . . .").

interest expenses and higher rates on recently acquired debt;[4] (3) spent money on gasoline by having to drive documents over to their attorney;[5] and (4) were made to feel financially insecure, exploited and embarrassed as well.

48. The false RRS collection account on Plaintiffs' credit reports, was published and sent to many third-parties, including numerous prospective and current creditors or other companies, from May 2022 until the present causing reputational harm and increased interest expenses.

49. Misstatements to credit reporting agencies or other third parties cause harm that is closely analogous to the harm traditionally regarded as providing the basis for libel and slander claims in English and American courts. *See Pinson v. JPMorgan Chase Bank*, 942 F.3d 1200 (11th Cir. 2019) (harm caused by reporting false information to credit bureau is closely related to that caused by defamation; consumer has standing to assert FDCPA claim); *Pedro v. Equifax, Inc.,* 868 F.3d 1275, 1279–1280 (11th Cir. 2017) (FCRA case; "the reporting of inaccurate information about [plaintiff's] credit to a credit monitoring service" is a concrete injury because it has "a close relationship to the harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts.").

---

[4]    *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019) (reduced credit score and "lost credit opportunities" are concrete economic harms).

[5]    *See generally TransUnion L.L.C. v. Ramirez*, ___ U.S. ___, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021) (monetary harm is concrete).

50.    Here, RRS misstated a collection account balance of $88 on a debt that Plaintiffs did not owe to at least two credit bureaus, TransUnion and Equifax.

51.    In addition to increased gasoline costs necessary to give documents for their attorney's review, Plaintiffs have also incurred over $15 of expenses sending letters via certified mail and to credit bureaus to contest the false debt alleged by Defendants. *See Foley v. Mary Washington Healthcare Servs., Inc.*, 2021 WL 3193177 (E.D. Va. July 28, 2021) (post-*Ramirez* decision; purchase of postage stamp in order to dispute debt in writing, because of collector's failure to disclose that dispute could be oral, is concrete harm). *See also Viernes v. DNF Assoc.*, 2022 WL 252467 (D. Haw. Jan. 27, 2022) (post-*Ramirez* decision; $13.70 in postage to mail dispute letters in response to lawsuit that unlicensed collector had no right to file is concrete harm).

52.    Defendants' illegal collection activities have caused Plaintiffs actual harm, including but not limited to, reputational harm, invasion of privacy, nuisance, wasting Plaintiff's time, emotional distress, aggravation, harassment, anxiety, and loss of concentration.[6]

---

[6]  *Davis v. Portfolio Recovery Assoc.,* 2021 WL 4133733 (M.D. Fla. Sept. 10, 2021) (post-*Ramirez* decision; time spent consulting attorney because of demand for time-barred debt is concrete harm; consumer also alleged unspecified monetary losses and emotional distress); *Sykes v. Veripro Solutions, Inc.,* 2020 WL 4926547 (N.D. Ill. Aug. 21, 2020) (finding standing where consumer alleged that collection letter misinformed him about character of debt, whether there was enforceable lien on his property, and whether debt could be legally reported to credit agencies, and that as a result he was harassed, aggravated, concerned, and intimidated, and retained counsel); *Keys v. Collection Profs., Inc.,* 2018 WL 1469006 (N.D. Ill. Mar. 26, 2018) (paying for credit report to determine whether collector was adding unauthorized interest is concrete injury); *Ferris v. Transworld Sys., Inc.,* 2018 WL 701285, at *3 (N.D. Ill. Jan. 31, 2018) (collector's provision of false information creates risk of harm, in that, if debtor is forced to investigate it, the delay may result in further fees and harm to credit

53. Concerned about the violations of their rights and invasion of their privacy, Plaintiffs sought the assistance of counsel to permanently cease Defendant's unlawful collection efforts.

54. Again, Plaintiffs have expended time and incurred costs consulting with their attorney because of Defendants' false, deceptive, harassing, and misleading collection efforts.

55. Defendants' harassing and unfair collection conduct has disrupted Plaintiffs' daily life and general well-being.

**COUNT I – Against RRS Only**
**FAIR DEBT COLLECTION PRACTICES ACT**
**Violation of 15 U.S.C. §§ 1692e, 1692e(2)(A)**

56. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

57. Specifically, Section 1692e(2)(A) prohibits a debt collector from using ""any false, deceptive, or misleading representation or means in connection with the

---

rating); *Horowitz v. GC Servs. L.P.*, 2016 WL 7188238 (S.D. Cal. Dec. 12, 2016) (non-debtor's expenditure of time to respond to voice mail, his use of cell phone minute, and collector's recording of his call without telling him).*See also Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020) (suggesting that debtor's calls and letters to investigate accuracy of debts might be concrete injury if she had made them because of confusion arising from violation alleged, i.e., collector's failure to disclose whether interest was accruing); *Frank v. Autovest, L.L.C.*, 961 F.3d 1185, 1190 (D.C. Cir. 2020) (stating in *dicta* that standing might be established by "investigatory injuries—e.g. resources spent uncovering or confirming the truth"); *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119–1122 (9th Cir. 2014) (pre-*Spokeo* decision; identifying "American Investment Bank, N.A.," instead of "CIT Online Bank" as the originator of loan could cause consumer to engage in attempt to investigate debt that would use up part of thirty-day period to dispute it). *See generally TransUnion L.L.C. v. Ramirez*, ___ U.S. ___, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021) (monetary harm is concrete).

collection of any debt," which also includes the false representation of "**the character, amount, or legal status of any debt**." (emphasis added).

### MISREPRESENTATION OF THE "AMOUNT" "OF ANY DEBT"

58.     Section 1692e(2)(A) of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "**the ... amount, ... of any debt**." (emphasis added).

59.     RRS violated Section 1692e(2)(A) when it attempted to collect amounts from Plaintiffs which they did not owe. The "amount" Plaintiffs actually owed was $0, yet RRS claimed otherwise.

60.     RRS here is strictly liable for misrepresenting the "Current Balance" of the debt as "$88" during its attempted collection and credit reporting.

61.     "Where the FDCPA requires clarity, ... ambiguity itself can prove a violation." *Manuel*, 956 F.3d at 832.

62.     15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

63.     WHEREFORE, Plaintiffs request judgment in her favor, and against RRS for an award of:

    a.     Statutory damages of an amount not to exceed $1,000 dollars total, for

    all violations, under 15 U.S.C. § 1692k(a)(2)(A);

b.     Actual damages under 15 U.S.C. § 1692k(a)(1);

c.     Reasonable attorney's fees and costs of the action under 15 U.S.C. § 1692k(a)(3); and

d.     Such other or further relief as the Court deems just proper.

**COUNT II – Against RRS Only**
**TEXAS DEBT COLLECTION ACT**
**Violation of Tex. Fin. Code Ann. § 392.202**

64.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

65.     Plaintiffs sent a "notice of inaccuracy" ("NOI") letter to RRS that was received July 5, 2022.

66.     Upon receipt, because RRS was credit reporting at the time, RRS was required to both investigate and immediately cease collection efforts. Texas Finance Code, § 392.202(a) ("If the third-party debt collector reports information related to the dispute to a credit bureau, the reporting third-party debt collector shall initiate an investigation of the dispute … and **shall cease** collection efforts until the investigation determines the accurate amount of the debt, if any.") (bold emphasis added).

67.     Next, within 30 days from its receipt of the NOI letter, RRS was required to "send a written statement" to Plaintiffs which must: (1) admit the inaccuracy; or (2) state that it needs more time to investigate, or (3) deny the inaccuracy. *See* Texas Finance Code, §§ 392.202(b) & (e); ("On completion by the third-party debt collector

of the investigation, the third-party debt collector **shall inform** the individual of the determination of whether the item is accurate or inaccurate.") (bold emphasis added).

68.     RRS never sent Plaintiffs a written statement. Thus, RRS failed its legal responsibilities, and instead continued to credit report its collection tradeline in violation of Texas law.

69.     The "amount" Plaintiffs in fact owed was $0, yet RRS claimed otherwise. Had RRS made a proper investigation, it would have easily learned the truth.

70.     WHEREFORE, Plaintiffs request judgment in their favor, and against RRS for an award of:

a.      Injunctive relief to prevent or restrain present and future violations of the 392.202, TDCA as provided TEX. FIN. CODE § 392.403(a)(1);

b.      Damages of not less than $100 under TEX. FIN. CODE § 392.403(e);

c.      Exemplary damages under Tex. Civ. Prac. & Rem. Code §41.002;

d.      Reasonable attorney's fees, litigation expenses and costs of suit under TEX. FIN. CODE § 392.403(b); and

d.      Such other or further relief as the Court deems just proper.

**COUNT III – Against RRS Only**
**FAIR DEBT COLLECTION PRACTICES ACT**
**Violation of 15 U.S.C. §§ 1692e(5)**

71.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

72.     Section 1692e provides:

**§ 1692e. False or misleading representations [Section 807 of P.L.]**

> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

73.     RRS could not legally engage in collection efforts to collect the disputed debt from Plaintiffs until it had performed an investigation and reported the results of same to Plaintiffs. RRS' threat to collect was improper. The "amount" Plaintiffs in fact owed was $0, yet RRS claimed otherwise. Had RRS made any investigation, it would have easily learned the truth.

74.     Thus, RRS violated § 1692e(5) of the FDCPA when it took "action that cannot legally be taken" against Plaintiffs. *See Poirer v. Alco Collections, Inc.*, 107 F.3d 347, 351 (5th Cir. 1997).

75.     WHEREFORE, Plaintiffs request judgment in her favor, and against RRS for an award of:

a.     Statutory damages of an amount not to exceed $1,000 dollars total, for all violations, under 15 U.S.C. § 1692k(a)(2)(A);

b.     Actual damages under 15 U.S.C. § 1692k(a)(1);

c.     Reasonable attorney's fees, litigation expenses and costs of the action under 15 U.S.C. § 1692k(a)(3); and

d.     Such other or further relief as the Court deems just proper.

**<u>COUNT IV – Against RRS Only</u>**
**FAIR DEBT COLLECTION PRACTICES ACT**

## Violation of 15 U.S.C. §§ 1692e, 1692e(10), and 1692f

76.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

77.     Section 1692e provides:

**§ 1692e. False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

78.     Section 1692f provides:

**§ 1692f. Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

79.     RRS engaged in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§1692e, 1692e(10), and 1692f, by dunning Plaintiffs for $88, and reporting a false collections account, even though they did not owe anything.

80.     The "amount" Plaintiffs in fact owed was $0, yet RRS claimed otherwise. Had RRS made a proper investigation, it would have easily learned the truth.

81.     WHEREFORE, Plaintiffs request judgment in her favor, and against RRS for an award of:

a.     Statutory damages of an amount not to exceed $1,000 dollars total, for

all violations, under 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages under 15 U.S.C. § 1692k(a)(1);

c.      Reasonable attorney's fees, litigation expenses and costs of the action under 15 U.S.C. § 1692k(a)(3); and

d.      Such other or further relief as the Court deems just proper.

**COUNT V – Against Both Defendants**
**TEXAS DEBT COLLECTION ACT**
**Violation of Tex. Fin. Code Ann. §§ 392.304(a)(8) & 392.304(a)(19)**

82.      Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

83.      A debt collector may not use any fraudulent, deceptive, or misleading representation that "misrepresent[s] the character, extent, or amount of a consumer debt...." *See* TEX. FIN. CODE § 392.304(a)(8).

84.      A debt collector may not use "any other false representation or deceptive means to collect a debt...." *See* TEX. FIN. CODE § 392.304(a)(19).

85.      For the same reasons that the RRS is liable under §§ 1692e, 1692e(2)(A) and 1692f of the FDCPA in Counts I and IV above, RRS is also liable under §§ 392.304(a)(8) & 392.304(a)(19) of the Texas Finance Code, as is The Landing.

86.      "A person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter." *See* TEX. FIN. CODE § 392.403(a)(1)-(2). "A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably

related to the amount of work performed and costs." *See* TEX. FIN. CODE § 392.403(b).

87.     WHEREFORE, Plaintiffs request judgment in their favor, and against RRS and The Landing for an award of:

a.     Injunctive relief to prevent or restrain any violations of the TDCA as provided TEX. FIN. CODE § 392.403(a)(1);

b.     Actual damages under TEX. FIN. CODE § 392.403(a)(2);

c.     Exemplary damages under Tex. Civ. Prac. & Rem. Code §41.002;

d.     Reasonable attorney's fees, litigation expenses and costs of suit under TEX. FIN. CODE § 392.403(b); and

e.     Such other or further relief as the Court deems just proper.

## JURY

88.     Plaintiff requests a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated: February 8, 2023                    Respectfully submitted,


By:   /s/ Tod A. Lewis

Tod A. Lewis (Texas Bar #24091999)
Tod Lewis Law, PLLC
13267 Darwin Lane
Austin, TX 78729-6464
512-739-0390 (cell)
1-737-205-1291 (facsimile)
Tod@texasfaircredit.com

Attorney for Plaintiff